Maria Blanca SANCHEZ, et al., Appellants,

v.

MEMORIAL MEDICAL CENTER HOSPITAL, et al., Appellees.

No. 13–88–287–CV.

Court of Appeals of Texas, Corpus Christi.

March 30, 1989.

Dan L. Barber, Corpus Christi, for appellants.

Francis A. Bradley, Peter R. Meeker, Austin, for appellees.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from an order which sustained a motion for summary judgment filed by defendants-appellees Dr. E.S. Crenshaw, Memorial Medical Center Hospital, and nurses Carol Ramirez, Rayme Worsham, Diana Garcia, Mary Margaret Rodriguez, Brenda Ashley Benton, and Evonne Mouw. Plaintiffs-appellants, Maria Blanca Sanchez, individually and on behalf of Felix Sanchez' estate, Olda De La Garza Flores, Maria Felix Sanchez, Angelita Sanchez Hernandez, Santos Escobar, Renee Sanchez, and Francisco Sanchez, sued appellees alleging that their negligence resulted in Felix Sanchez' (decedent's) death. The trial court granted appellees' motion for summary judgment on the basis of limitations as provided in Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp.1989).

Appellants allege that on December 28, 1984, the decedent entered the Camp Traylor Memorial Hospital (now Memorial Medical Center) (MMC) emergency room, exhibiting blue hands, glassy eyes, and short periods of apnea. On December 29, 1984, he experienced difficulty breathing. Later that day, MMC staff transferred him to intensive care. He was diagnosed as having had a stroke. Three minutes after transfer, he suffered respiratory and cardiac arrest. He was intubated thirteen minutes afterwards. On December 31, 1984, MMC sent him to a Victoria hospital. His condition deteriorated, and he died on February 15, 1985. On December 12, 1986, appellants sent a "notice of claim" letter to Dr. E.S. Crenshaw. Suit was filed against appellees on April 13, 1987. Pertinent to this appeal, appellants alleged that appellees negligently treated the decedent by failing to properly monitor him for his apnea and by failing to timely intubate him following his respiratory and cardiac arrest.

Appellees asserted their right to summary judgment based on article 4590i, § 10.01. They claimed that appellants failed to file their suit by March 16, 1987, two years and seventy-five days after decedent's last day of hospitalization at MMC. Appellants' response asserts that limitations did not bar their suit. They alleged that Tex.Civ.Prac. & Rem.Code Ann. §§ 16.003 and 16.062 (Vernon 1986) govern this lawsuit, that appellees fraudulently concealed decedent's alleged negligent treatment, and that decedent's "hospitalization," as used in article 4590i, § 10.01 actually ended on February 15, 1985.

In their first point of error, appellants argue that the trial court erred in granting summary judgment because a genuine issue of material fact exists regarding whether appellees fraudulently concealed decedent's alleged negligent treatment. Appellants contend that appellees allowed thirteen minutes to elapse before intubating (the introduction of a tube into the trachea to keep it open) decedent following his cardiac and respiratory arrest. They also contend that appellants checked decedent only hourly for his apnea. They maintain that appellees knew about this conduct but did not tell them. Appellants state that they did not learn about this conduct until after decedent's death.

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 provides:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. . . .

Our Supreme Court in *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex.1983), held that in a medical malpractice case, article 4590i, § 10.01 did not abolish fraudulent concealment as a basis for extending limitations in health care liability actions.

▇▇▇ Fraudulent concealment is a species of the equitable estoppel doctrine. *Evans v. Conlee*, 741 S.W.2d 504, 506 (Tex. App.—Corpus Christi 1987, no writ). It operates to preclude a defendant from relying on the statute of limitations as an affirmative defense to a claim where the defendant was under a duty to disclose the existence of a negligent act or injury to the wronged party, but concealed it. The physician-patient relationship imposes this duty upon a physician. When a physician conceals a cause of action from a patient, the physician is estopped from relying on the defense of limitations until the patient learns of the cause of action or should have learned about it through the exercise of reasonable diligence. *Id.*

The estoppel effect of fraudulent concealment terminates when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. *Borderlon*, 661 S.W.2d at 909. Knowledge of these facts is in law equivalent to knowledge of the cause of action.

The movant for summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,*

*Inc.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue exists to preclude summary judgment, evidence favorable to the non-movant will be taken as true. Every reasonable inference will be indulged in the non-movant's favor and any doubts resolved in its favor. When a defendant in a medical malpractice case moves for summary judgment based on the running of limitations, the defendant bears the burden of showing that the suit is barred by limitations as a matter of law. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). If the defense of limitations is conclusively established, and the plaintiff resists the summary judgment by asserting the affirmative defense of fraudulent concealment, the plaintiff then has the burden to produce evidence which raises a fact issue regarding fraudulent concealment. *See Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex.1977); *Nichols v. Smith*, 507 S.W.2d 518, 521 (Tex.1974).

▇▇▇ We conclude that appellees decisively established their limitations defense. The provision in article 4590i, § 10.01 that permits limitations to run "from the date the medical or health care treatment that is the subject of the claim ... is completed" applies to a situation where the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last day of treatment. *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987). This situation usually arises in suits alleging misdiagnosis or mistreatment. Here, decedent entered MMC on December 28, 1984, exhibiting signs of apnea. He left MMC on December 31, 1984. Appellants allege that appellees negligently treated decedent by failing to properly monitor him for his apnea. We conclude that this is a situation where decedent's alleged injury occurred during a course of treatment for a particular condition. *See Kimball*, 741 S.W.2d at 372. The last date on which the alleged negligent treatment could have occurred is December 31, 1984. Therefore, the two-year limitations period commenced on December 31, 1984, the date decedent's treatment at MMC ended. Appellants gave

written notice of their health care liability claim on December 12, 1986. According to article 4590i, § 4.01, this tolled the two-year limitations statute "to and including a period of 75 days following the giving of the notice." Appellants had until March 16, 1987 to file their lawsuit, and they failed to meet this deadline.

To invoke the doctrine of fraudulent concealment, as alleged, appellants had to offer evidence that appellees failed to intubate the deceased for thirteen minutes following his cardiac and respiratory arrest, that appellees observed the deceased only hourly for his apnea, and that appellees had knowledge of these alleged facts and concealed them from appellants. The only evidence placed before the trial court at the summary judgment hearing that tended to show that appellees had knowledge of these alleged facts was contained in two affidavits by appellants Maria Blanca Sanchez and Maria Felix Sanchez. These affidavits are attached to appellants' response and provide in relevant part that:

Although the Nurses in Memorial Medical Center and Dr. Crenshaw knew of the thirteen minute gap between their noting his arrest and their putting him on oxygen, and of the periods of apnea for which he was checked only hourly, none of them ever told me or my family of such inaction. I learned of it only after the death of [decedent] ... from statements of Dr. Crenshaw and the Nurses.

We hold that these affidavits, alleging that appellees knew about the thirteen minute delay and about the hourly apnea checks, amounted to mere conclusions. Supporting and opposing affidavits consisting only of conclusions are insufficient to raise an issue of fact. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). Our rules provide that supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters asserted therein. Tex.R.Civ.P. 166a(e). Here, the affiants made no effort to swear to any facts to support these conclusions or to prove that they really knew what appellees allegedly knew.

Appellants presented no legitimate evidence having probative force that either showed or tended to show that appellees failed to intubate the deceased for thirteen minutes or only checked him hourly for his apnea. Without this knowledge by appellees, there could be no fraudulent concealment as alleged by appellants. Therefore, appellants failed to establish by proof that a fact issue is present in this case regarding the issue of fraudulent concealment. This the law required them to do in order to defeat appellees' motion for summary judgment. *See Weaver,* 561 S.W.2d at 793; *Nichols,* 507 S.W.2d at 521. The first point of error is overruled.

■ In their second point of error, appellants argue that the trial court erred in granting summary judgment in appellees' favor because Tex.Civ.Prac. & Rem.Code Ann. §§ 16.003(b) and 16.062(a) (Vernon 1986) tolled the two year limitations period provided in article 4590i, § 10.01. Section 16.003(b) provides:

A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person.

Excluding the representative of decedent's estate, appellants contend that the two-year limitations period commenced on February 15, 1985, the date decedent died. They state that since appellees received notice of their health care liability claim sixty days prior to expiration of the two-year limitations period provided in article 4590i, § 10.01, the two-year limitations period found in section 16.003(b) was tolled for seventy-five days. Appellants state that they had until April 31, 1987 to file their suit.

Regarding decedent's estate, appellants argue that section 16.062(a) tolled for an additional twelve months the two-year limitations period provided in article 4590i, § 10.01. Section 16.062(a) provides:

The death of a person against whom or in whose favor there may be a cause of

action suspends the running of an applicable statute of limitations for 12 months after the death.

In other words, up to twelve months is extended, if this statute applies to the instant case, which would make the suit timely filed on behalf of decedent's estate.

We disagree with appellants' arguments and hold that sections 16.003 and 16.062 do not act to invalidate the absolute two-year limitations period contained within article 4590i, § 10.01. Article 4590i, § 10.01 provides in relevant part that *"[n]otwithstanding any other law,* no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed...."* (emphasis added). We believe the language of this statute to be clear and exclusive. The Medical Liability and Insurance Improvement Act contains limited tolling provisions, suspending the two-year limitations statute during minority, § 10.01, and upon the giving of notice, § 4.01(a).

In *Hill v. Milani,* 686 S.W.2d 610, 611 (Tex.1985), our Supreme Court considered whether article 5537 (now Tex.Civ.Prac. & Rem.Code Ann. § 16.063), dealing with temporary absence from the state, affects the two-year limitation of article 4590i, § 10.01. The Court held that an absence from this state was not a specific tolling provision within the confines of article 4590i, but was part of the "other law" and as such could not override the two-year limitations statute. *Id.* In *Rascoe v. Anabtawi,* 730 S.W.2d 460, 461 (Tex.App.—Beaumont 1987, no writ), the Beaumont Court of Appeals relied on the *Hill* Court's analysis to conclude that section 16.062 does not toll the statute of limitations in a wrongful death survival action arising out of medical malpractice.

Applying the *Hill* Court's analysis to appellants' first argument, section 16.003 is also not a provision of the Medical Liability Insurance Improvement Act specifically tolling the two-year limitation of article

4590i, § 10.01 but is part of the "other law." Therefore, we conclude that section 16.003 cannot work to expand the absolute two-year limitation of 4590i, § 10.01.

Appellants argue that where a patient, like the decedent in this case, becomes incapable of determining the alleged malpractice received by himself due to the effects of that malpractice, article 4590i, § 10.01 should be tolled until the date of decedent's death. To hold otherwise, they contend, would be a violation of due process and the open courts doctrine of the Texas Constitution. However, appellants failed to raise any constitutional challenges in their response in the trial court. Constitutional challenges not expressly presented to the trial court by written motion, answer or other response will not be considered by this Court on appeal as grounds for reversal. *City of San Antonio v. Schautteet,* 706 S.W.2d 103, 104 (Tex.1986); *Barnes v. J.W. Bateson Co., Inc.,* 755 S.W.2d 518, 521 (Tex.App.—Fort Worth 1988, no writ). The second point of error is overruled.

█ In their final point of error, appellants argue that the trial court erred in granting summary judgment because the suit was filed within two years and seventy-five days of the last date of hospitalization. Appellants state that decedent entered MMC on December 28, 1984, and on December 31, 1984, he was transferred to another hospital where he died on February 15, 1985. They argue that decedent's stay in both hospitals amounted to one continuous period of "hospitalization" as that term is used in article 4590i, § 10.01. They again argue that a contrary holding by us would violate the open courts provision of the Texas Constitution. According to appellants' argument, decedent's "hospitalization" as used in article 4590i, § 10.01 ended on February 15, 1985, and limitations commenced from that date.

Article 4590i, § 10.01 provides in relevant part that the limitations period commences on the date the "medical or health care treatment that is the subject of the claim or the *hospitalization for which the claim is made is completed."* In the instant case, decedent was discharged from

MMC on December 31, 1984, and the alleged negligent treatment administered to him by appellees ceased on that date. We hold that the "hospitalization for which the claim is made" terminated on December 31, 1984, and limitations commenced on that date. Furthermore, we reiterate that this Court will not entertain on appeal a question involving the open courts provision of the Texas Constitution when appellants failed to raise the issue in their response to appellees' motion for summary judgment. *Schautteet,* 706 S.W.2d at 104; *Barnes,* 755 S.W.2d at 521. The final point of error is overruled.

The judgment of the trial court is AFFIRMED.