IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-40062

Summary Calendar
_____

JOHN DOE I; JOHN DOE II; JOHN DOE III

Plaintiffs - Appellants,

v.

HENDERSON INDEPENDENT SCHOOL DISTRICT, ET AL

Defendants

HENDERSON INDEPENDENT SCHOOL DISTRICT; RAY DEASON; EASTSIDE
BAPTIST CHURCH

Defendants - Appellees

_____

Appeal from the United States District Court
for the Eastern District of Texas
(6:98-CV-698)
_____

October 31, 2000

Before KING, Chief Judge, and WIENER and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants John Doe I, John Doe II, and John Doe

III appeal from the district court's grant of summary judgment in

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

favor of Defendants-Appellees Henderson Independent School District, Ray Deason, and the Eastside Baptist Church.  For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL HISTORY

John Doe I, John Doe II, and John Doe III brought the instant suit against the Henderson Independent School District (HISD), Ray Deason, the Eastside Baptist Church (the "Church"), and Kenneth Ward for injuries sustained from the sexual abuse perpetrated by Ward from 1978 to 1981, when the plaintiffs were minors.[1]  The complaint against HISD, Deason, and the Church was brought under 42 U.S.C. § 1983, alleging various violations of the plaintiffs' civil and constitutional rights.[2]

Doe I and Doe II filed suit on November 20, 1998, approximately nine years after their eighteenth birthdays.  Doe III joined the suit in February of 1999, almost fifteen years after his eighteenth birthday.  All the defendants, except Ward,[3]

_____

[1] During the time of the abuse, Ward was the plaintiffs' teacher at Northside Elementary School, where Deason was the principal.  In that capacity, Ward was employed by HISD.  He was also the plaintiffs' pastor at the Church.

[2] The allegations against HISD, Deason, and the Church include negligent hiring and supervision, failure to warn about Ward's dangerous sexual propensities, intentional infliction of emotional distress, failure to offer counseling and assistance, negligent assumption of risk of intentional or criminal conduct, negligent misrepresentation involving risk of physical harm, deliberate indifference in ensuring the protection of the plaintiffs' constitutional rights of bodily integrity and personal security, fraudulent concealment, and conspiracy.

[3] Ward was served with the plaintiffs' original complaint, and although he never made a formal appearance, he was deposed by

2

moved for summary judgment on the ground that the plaintiffs'
claims were barred by the statute of limitations.

The plaintiffs countered that the limitations period was
either tolled or the defendants were estopped by their actions
from asserting a statute of limitations defense.  To support
these claims, the plaintiffs asserted several tolling and
estoppel doctrines, including unsound mind, fraudulent
concealment, the discovery rule, and equitable estoppel.

The district court granted summary judgment to the
defendants and issued a show cause order directing the plaintiffs
to demonstrate why the case against Ward should not also be
dismissed.  The plaintiffs filed a timely notice of appeal of the
court's judgment and requested the district court to hold in
abeyance the case against Ward pending resolution of this appeal.
The district court entered an order administratively closing the
case until the appeal is resolved by this court.  On August 11,
2000, pursuant to a request for clarification from this court,
the district court entered a final judgment pursuant to Rule
54(b) for the defendants' summary judgment claims.[4]

---

the parties.  The record does not indicate that Ward was served
with the plaintiffs' First Amended Complaint.  Apparently, Ward
pleaded guilty in an unrelated criminal matter to molesting a
young boy who is not a plaintiff in this case.  Therefore, for
purposes of this opinion, the "defendants" are HISD, Deason, and
the Church.

[4] Any concerns about jurisdiction were resolved by the
issuance of this final judgment.  Although this action involves
multiple parties, the district court found, despite Ward's
failure to join in the motion for summary judgment, that the
question at issue is equally applicable to his claims and that
all parties would suffer economic hardship from further delay.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same criteria used by the district court in the first instance. See Bussian v. RJR Nabisco, 223 F.3d 286, 293 (5th Cir. 2000). Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000) (citation omitted). "[W]e must view all facts in the light most favorable to the nonmovant." Cardinal Towing & Auto Repair, Inc. v. City of Bedford, 180 F.3d 686, 690 (5th Cir. 1999).

This court also reviews a district court's decision concerning the tolling of limitations de novo. See Rashidi v. Am. President Lines, 96 F.3d 124, 126 (5th Cir. 1996).

## III. DISCUSSION

On appeal, the plaintiffs argue that the district court erred in granting summary judgment to the defendants on the issues of unsound mind, fraudulent concealment and fraud, the discovery rule, equitable estoppel, and conspiracy.

### A.  Accrual of Cause of Action

Before addressing the merits of the plaintiffs' claims, we must first determine when the cause of action accrued, as it is from that point that the limitations period is measured. There

_____

Rule 54(b) is therefore satisfied.

4

is no federal statute of limitations for § 1983 actions, and the federal courts borrow the forum state's general personal injury limitations period. See Owens v. Okure, 488 U.S. 235, 249-50 (1989); Rotella v. Pederson, 144 F.3d 892, 897 (5th Cir. 1998). Texas has a limitations period of two years for personal injury actions. See TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon Supp. 2000); Jackson v. Johnson, 950 F.2d 263, 265 (5th Cir. 1992). In 1995, the Texas legislature adopted a special limitations statute providing that personal injury actions arising as a result of conduct that violates sexual assault provisions of the Texas Penal Code may be brought within five years from the date that the cause of action accrues. See TEX. CIV. PRAC. & REM. CODE ANN. § 16.0045.[5]

Although the federal courts look to state law to determine the applicable statute of limitations, they look to federal law to determine when the cause of action accrued. See Pete v. Metcalfe, 8 F.3d 214, 217 (5th Cir. 1993). Under federal law, a cause of action accrues at the time the plaintiff "knows or has reason to know of the injury which is the basis of the action." Id. (internal quotations and citation omitted); see also Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir. 1995).

We agree with the district court that the causes of action accrued prior to the plaintiffs' eighteenth birthdays. In their

---

[5] We agree with the district court that we need not determine whether the two-year or five-year limit applies to the instant action. If the statute of limitations is not tolled, the causes of action are time-barred even under the longer five-year limit.

depositions, all three plaintiffs testified that, although they did not speak of the abuse or "learned not to think about it," they knew the conduct was wrong.[6] The plaintiffs' causes of action accrued when they realized the conduct was wrong because it was at that time that the plaintiffs "kn[ew] or ha[d] reason to know of the injury which is the basis of the[ir claims]."[7] See, e.g., Chapman v. Homco, Inc., 886 F.2d 756, 758 (5th Cir. 1989) (holding that limitations period began on date of discharge from employment, not on date of discovery of discriminatory intent); Longoria v. City of Bay City, 779 F.2d 1136, 1138-39 (5th Cir. 1986) (finding limitations period began to run when the flooding occurred, not when plaintiffs learned the city had been on notice of flooding potential and had fraudulent motive).

The cause of action accrued when the "wrongful act cause[d] some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996). Therefore, whether or not the plaintiffs were aware of the extent of the damage caused by Ward's actions, their causes of actions

---

[6] Doe I testified that he kept the abuse by Ward a secret from 1981 to 1995, although it was always in his mind tormenting him. Doe II testified that he blocked out many of the memories of abuse and learned not to think about it, but he never forgot what Ward had done to him. Doe III testified that by the time he was eleven or twelve years old he knew what Ward was doing to him was wrong, and he thought about telling his parents.

[7] We also note what is not an issue. This is not a situation in which the plaintiffs assert they have repressed the memories of the abuse and, therefore, did not "know" of the injury.

accrued prior to their eighteenth birthdays.[8]  As such, unless the statute of limitations is tolled or the defendants are estopped from asserting limitations as a defense, the plaintiffs' causes of action are time barred.

### B.  Unsound Mind

The plaintiffs assert that they suffered from the disability of unsound mind and that, therefore, the limitations period should be tolled.  Specifically, they argue that they suffer from "Traumatic Bonding," "Learned Helplessness," and Post-Traumatic Stress Disorder, as well as "denial, impaired cognitive appraisals, guilt, shame, self-blame, etc.," and therefore "failed to appreciate the life-long injury that had been inflicted upon them."

A federal court applying a state statute of limitations should give effect to the state's tolling provisions as well. See Pete, 8 F.3d at 217.  The Texas tolling provisions provide that when a person is of unsound mind at the time his cause of action accrues, the applicable statute of limitations will be tolled until the disability is removed.  See TEX. CIV. PRAC. & REM. CODE ANN. § 16.001; Helton v. Clements, 832 F.2d 332, 336 (5th Cir. 1987).  The purpose of the statute is "to suspend limitation with respect to persons who have no access to the courts." Helton, 832 F.2d at 336 (internal quotations and footnote

---

[8] We need not decide the exact moment the causes of action accrued because there is no dispute that the causes of action were tolled until the end of the plaintiffs' minority at age eighteen.

omitted).  It is also designed to protect persons who are unable "to participate in, control, or even understand the progression and disposition of their lawsuit."  <u>Ruiz v. Conoco</u>, 868 S.W.2d 752, 755 (Tex. 1993).

The term "unsound mind" generally "has been interpreted to mean that such a person is unable to manage his affairs or to understand his legal rights or liabilities."  <u>Helton</u>, 832 F.2d at 336 (internal quotations and footnote omitted).  However, under Texas law, a person of "unsound mind" need not be adjudicated incompetent to prevent summary judgment.  <u>See</u> <u>Casu v. CBI Na-Con, Inc.</u>, 881 S.W.2d 32, 34 (Tex. App. – Houston [14th Dist.] 1994, no writ).[9]  "To prevent summary judgment, it is only required that the plaintiff <u>raise the issue of</u> mental incompetency."  <u>Id.</u>

The plaintiffs argue that their "Traumatic Bonding" with Ward and "Learned Helplessness" made them unable to assert their rights "with respect to the wrong committed by Ward and the institutional defendants."  They argue that traumatic bonding is a "defensive attempt" to insulate against fear and helplessness.

---

[9] Although the courts do not require that the plaintiff be adjudicated incompetent, they require a showing of serious mental injuries.  In <u>Casu v. CBI NA-CON, Inc.</u>, no writ), cited by the plaintiffs, the plaintiff had not been adjudicated incompetent, but he had been diagnosed as incompetent by his doctor.  In that case, the plaintiff suffered from acute psychosis with significant paranoid features caused by exposure to a chemical explosion.  <u>See</u> 881 S.W.2d at 34.  The doctor's affidavits in <u>Casu</u> noted that plaintiff's cognitive functioning was defective and he suffered from confused thinking, problems with sustained attention, concentration, and judgment, and impaired memory.  <u>See</u> <u>id.</u>  Notably, one year after <u>Casu</u>, a Texas court of appeals stated in <u>Hargraves v. Armco Foods, Inc.</u>, 894 S.W.2d 546, 547 (Tex. App. 1995), that "in general, 'persons of unsound mind' and 'insane persons' are synonymous."

8

The plaintiffs assert further that they were also disabled by their mental condition of "denial." We agree with the district court that even taking the assertions of the plaintiffs as true, due to the above interpretation of "unsound mind" under Texas law, the plaintiffs' conditions simply do not reach the level of incapacity required to toll the statute of limitations.[10]

The Texas courts have generally applied "unsound mind" to toll the limitations period in cases in which the plaintiffs' injuries were substantial and prolonged, preventing them from being cognitively aware of, and lending assistance to, their lawsuit. See, e.g., Palla v. McDonald, 877 S.W.2d 472, 473-77 (Tex. App. - Houston [1st Dist.] 1994, no writ) (finding summary judgment on limitations bar improper where plaintiff suffered permanent brain damage and blindness); Felan v. Ramos, 857 S.W.2d 113, 116-17 (Tex. App. - Corpus Christi 1993, writ denied) (finding summary judgment on limitations bar in error when plaintiff was unconscious from date of surgery until death two years later); Tinkle v. Henderson, 730 S.W.2d 163, 165 (Tex. App. - Tyler 1987, writ ref'd n.r.e.) (finding material fact issue as

---

[10] The plaintiffs contend that the district court "treated the Defendants' expert opinions as effectively undisputed." From our review of the record, the district court thoroughly examined the evidence presented by both sides and found that "the very real psychological and emotional damages suffered by Plaintiffs" did not establish a genuine material issue of fact regarding unsoundness of mind as defined in Texas case law.

to mental competency when plaintiff suffered brain damage caused by oxygen deprivation).[11]

In the present case, all three plaintiffs have participated in life activities that belie a claim of their inability to manage their own affairs, appreciate their legal rights, or participate in their lawsuit.[12] They have held down jobs, been married, participated in legal proceedings, and in some cases, joined the military. This evidence shows that the plaintiffs are, and have been capable of, managing their own affairs and

_____

[11] By contrast, Texas courts deny tolling based on the unsound mind disability when the facts show the plaintiff is able to assert his legal rights. In Helton, this court refused to toll the limitations period when the facts alleged by the plaintiff did not show that his psychological depression rendered him unable to manage his affairs or comprehend his legal rights, but demonstrated only that it distracted him from pursuing his cause of action. Helton v. Clements, 832 F.2d 332, 336 (5th Cir. 1987). This court stated that the plaintiff's psychological condition was insufficient to establish unsoundness of mind where the evidence showed that "he undertook other activities such as going back to graduate school during this period." Id.

[12] Doe I attended Oklahoma Baptist University from 1990 to 1991, and East Texas Baptist University from 1991 to 1994, during which time he applied for financial aid and received both loans and scholarships. He was married in 1997 and divorced in 1998. For the divorce proceeding, he hired an attorney, went to court, and signed the relevant legal paperwork. In 1999, he joined the navy, passing all the required mental and physical tests, and began training to become a ship's navigator.
Doe II served in the Marine Corps for two years. He has been married for five years and has two children. He and his wife separated at one point during their marriage, at which time he hired an attorney to represent him in his divorce. He opened up a rodeo arena, but was ultimately forced into bankruptcy proceedings for which he hired an attorney and in which he participated.
Doe III is divorced with two children. He represented himself in the divorce. He maintains regular visits with his children and understands his support obligations. He attended Kilgore College for two or three years and has worked in sales at Texas Kilgore Tire Center for almost ten years.

participating in a lawsuit since their eighteenth birthdays. Although the plaintiffs suffered very real harm at the hands of Ward, they are not of unsound mind as contemplated by the Texas statute of limitations, despite the diagnoses by their experts. Therefore, the district court did not err in refusing to toll the limitations period based on unsound mind.

## C. Fraudulent Concealment, Fraud, and the Discovery Rule

The plaintiffs also assert that the district court erred in granting summary judgment to the defendants on three other claims that would have tolled their causes of action: fraudulent concealment, fraud,[13] and the discovery rule. The Texas Supreme Court has stated that there are essentially two classes of cases in which the limitations period is tolled due to deferred accrual of a cause of action: "those involving fraud and fraudulent concealment, and all others. The deferral of accrual in the latter cases is properly referred to as the discovery rule." S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996). Fraudulent concealment is based on an equitable estoppel theory to prevent a defendant from invoking a limitations defense. See Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex. 1983). The discovery rule, on

---

[13] The plaintiffs assert that fraud is a separate theory that will toll the statute of limitations. However, although they are two different theories, the tolling analysis is the same for both. "[T]he cases in which we have deferred accrual of causes of action for limitations purposes fall into two categories: those involving fraud and fraudulent concealment, and all others . . . . We observe the distinction between the two categories because each is characterized by different substantive and procedural rules." S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996). Therefore, we refrain from analyzing fraud as a separate claim.

11

the other hand, may toll the limitations period when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable."  Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex. 1994).

   1.  Fraudulent Concealment

   "Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence."  Borderlon, 661 S.W.2d at 908.  The estoppel effect lasts only until "a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action."  Id. at 909.

   We agree with the district court that, even assuming a continuing duty to disclose existed, the plaintiffs possessed sufficient knowledge by age eighteen of facts or circumstances that would cause a reasonable person to inquire further and lead to the discovery of the concealed cause of action.  Although a person may be relieved of diligence in discovering an injury when owed a fiduciary duty, "when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship."  S.V., 933 S.W.2d at 8.[14]

_____

   [14] "[T]he fiduciary rationale is, in reality, a variation on the inherently undiscoverable element."  Computer Assocs., 918 S.W.2d at 456.  Thus, the fiduciary relationship is properly

12

Although the plaintiffs argue that they were ignorant of the defendants' concealment, they were painfully aware of the abuse by Ward. The plaintiffs do not allege that they were deceived into thinking that they were not being abused when they were. See S.V., 933 S.W.2d at 8 (stating that plaintiff did not, and could not, allege fraudulent concealment when she was fully aware of the episodes of abuse).

The district court was correct in finding that the plaintiffs had sufficient knowledge to put them on notice of their claims. As discussed in the previous section, although each of the plaintiffs attempted to block out memories of the abuse, none of them forgot what had happened, and each knew that Ward's conduct was wrongful. The plaintiffs also knew that Ward was employed by HISD and the Church. Under federal law, a cause of action accrues, and the limitations period begins to run, when the plaintiff knows of his injury or has sufficient information to know that he has been injured. See Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir. 1995). The plaintiff need not know that a legal cause of action exists; he need only know facts that would support a claim. See id.; see also Longoria v. City of Bay City, 779 F.2d 1136, 1138-39 (5th Cir. 1986) (holding that the limitations period began to run when the flooding occurred, not when the plaintiffs learned the city had been on notice of the flooding potential and had a fraudulent motive).

---

analyzed in relation to the plaintiffs tolling theories and not as a separate tolling theory of its own.

13

Here, the plaintiffs had sufficient facts to know they had been injured and had sufficient information that would lead a reasonable person to inquire further.  The district court did not err in finding that fraudulent concealment did not toll the limitations period.

### 2. The Discovery Rule

The plaintiffs argue further that the limitations period was tolled by the discovery rule.  The "discovery rule applies in cases where the injured party did not and could not know of its injury at the time it occurred, that is, when the injury is inherently undiscoverable."  Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co., 866 S.W.2d 740, 743 (Tex. App. - Houston [14th Dist.] 1993, writ denied).

The plaintiffs argue that there is a fiduciary relationship between the defendants and the plaintiffs.  Under Texas law, a fiduciary's misconduct is presumed to be inherently undiscoverable.  See S.V., 933 S.W.2d at 8.  However, even assuming arguendo that a fiduciary relationship exists between the parties, not all injuries caused by fiduciaries are undiscoverable.  In Computer Associates, the Texas Supreme Court said that "in the fiduciary context, it may be said that the nature of the injury is presumed to be inherently undiscoverable, although a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs."  918 S.W.2d at 456.  Thus, the presumption of undiscoverability can be overcome with a showing that the plaintiffs actually had knowledge of the injury.

14

This is consistent with the Texas Supreme Court's statement in S.V. that apparent misconduct cannot be ignored, regardless of the fiduciary nature of the relationship. See S.V., 933 S.W.2d at 8.

A Texas court of appeals stated in Bayou Bend that a plaintiff need not know the full extent of his injury because it is the discovery of the injury, not all of the elements of the cause of action, that starts the limitations clock. See Bayou Bend, 866 S.W.2d at 743 ("[A]ll that is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible." (emphasis added)).

As discussed above, the plaintiffs knew they had been injured by Ward by the time of their eighteenth birthdays. They also knew that Ward was employed by HISD and the Church as that was the context in which they came in contact with Ward. This should have been sufficient knowledge by the plaintiffs that there was nothing left for them to "discover" for tolling purposes.[15] That the plaintiffs may not have fully appreciated the extent of their injuries due to the abuse by Ward, as put forth by their experts, is not controlling. "The fact that a party may not immediately be able to determine the total amount of damages it may suffer does not toll the statute of limitations." Bayou Bend, 866 S.W.2d at 744. There is no error

_____

[15] See Bayou Bend, 866 S.W.2d at 742 ("The discovery rule imposes a duty on the plaintiff to exercise reasonable diligence to discover facts of negligence or omission.").

15

in holding that the limitations period was not tolled by the discovery rule.

## D.  Other Claims

### 1. Equitable Estoppel

The plaintiffs argue further that the doctrine of equitable estoppel prevents the defendants from claiming the benefits of the limitations period.  To invoke equitable estoppel, a party must prove: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations [or concealments]."  Johnson & Higgins, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 515-16 (Tex. 1998).  The effect of such estoppel is not to suspend the running of the statute of limitations; "rather, the effect is simply to preclude the defendant from interposing limitations when it has induced the plaintiffs not to file suit, within the limitations period, on a cause of action the plaintiffs know they have."  Palais Royal, Inc. v. Gunnels, 976 S.W.2d 837, 849 (Tex. App. - Houston [1st Dist.] 1998, writ dism'd by agr.).

The plaintiffs assert that the defendants remained silent when they knew that Ward had abused young boys, thereby effectively assuring the plaintiffs of Ward's trustworthiness. The defendants argue that equitable estoppel is inapplicable because one of the elements of estoppel is that the plaintiff

16

lack knowledge of a material fact. Because the plaintiffs knew they had been abused by Ward, where Ward worked, and who supervised him, the defendants argue that they could not have prevented the plaintiffs from knowing a material fact.

In Leonard, a Texas court of appeals stated that the doctrine "presupposes that the plaintiff knows those facts [necessary to constitute accrual of a cause of action] but does not sue on the cause of action because the defendant has induced him not to sue." Leonard v. Eskew, 731 S.W.2d 124, 129 (Tex. App. - Austin 1987, writ ref'd n.r.e.). The plaintiffs knew about the abuse by Ward and certainly knew the abuse was wrong by the time they were eighteen. The plaintiffs fail to identify any representations by the defendants to the plaintiffs after their eighteenth birthdays that induced them not to file their lawsuit. A plaintiff "may not continue to rely upon the defendant's original inducement beyond a point when it becomes unreasonable to do so." Id. Here, the plaintiffs cannot rely on alleged misrepresentations made to them as minors when they knew about the abuse upon reaching majority. The district court did not err by refusing to apply equitable estoppel.

2. Statutory Duty to Report

The plaintiffs argue next that the defendants had a statutory duty to report suspicions of child abuse pursuant to the Texas Family Code. See TEX. FAM. CODE ANN. § 261.101 (Vernon Supp. 2000). Further, the plaintiffs note that a failure to report suspected child abuse is a criminal offense. See id.

17

§ 261.109 (Vernon 1996).  The plaintiffs thus claim that because the defendants violated their statutory duty to report Ward, they are estopped from asserting a limitations defense.

The Texas Supreme Court has stated that the mere fact that the legislature has adopted a criminal statute does not necessarily mean the statute is a standard for civil liability. See Perry v. S.N., 973 S.W.2d 301, 304 (Tex. 1998).  In Perry, the Texas Supreme Court held that "it is not appropriate to adopt Family Code section 261.109(a) as establishing a duty and standard of conduct in tort."  Id. at 309.  Therefore, the Perry plaintiffs could not maintain an action for negligence per se against the defendants for failing to report incidents of child molestation.

Because the child abuse reporting statute does not provide a standard of civil liability for negligence per se, it does not provide a standard for fraud.  If the reporting statute fails to support a fraud claim, it cannot support a claim to toll the limitations period based on fraud.

3. Conspiracy

Finally, the plaintiffs argue that "Texas law clearly recognizes a cause of action for civil conspiracy" and that the district court should have found "that fact issues regarding the defendants' conspiracy preclud[ed] the granting of summary judgment."  Civil conspiracy is a claim on the merits, which itself is subject to a two-year statute of limitations.  See Redman Indus., Inc. v. Couch, 613 S.W.2d 787, 789 (Tex. App. -

18

Houston [14th Dist.] 1981, writ ref'd n.r.e.); <u>see also</u> TEX. CIV. PRAC. & REM. CODE § 16.003(a) (Vernon Supp. 2000).  Therefore, the plaintiffs' argument fails to support a tolling of the limitations period.

## III. CONCLUSION

For the above-stated reasons, we AFFIRM the ruling of the district court.